# IN THE COURT OF APPEALS OF IOWA

No. 24-1460
Filed November 13, 2024

**IN THE INTEREST OF H.S.,**
**Minor Child,**

**H.S., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Joseph G. Martin, Cedar Falls, for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Tammy L. Banning of the Waterloo Juvenile Public Defender Office, Waterloo, attorney and guardian ad litem for minor child.

Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**AHLERS, Judge.**

The juvenile court terminated the parental rights of the mother and any unknown father to a child born in 2022. Only the mother appeals. She implicitly challenges one of the two statutory grounds for termination, contends termination is not in the child's best interests, and requests additional time to work toward reunification.

We conduct de novo review of orders terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). Our review follows a three-step process to determine if a statutory ground for termination has been satisfied, whether termination is in the child's best interests, and whether any permissive exception should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). However, we do not address a step if the parent does not challenge it on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). After reviewing a parent's claims within the three-step process, we consider any additional claims raised by the parent. *In re J.S.*, No. 24-1114, 2024 WL 4039439, at *1 (Iowa Ct. App. Sep. 4, 2024).

The juvenile court found statutory grounds authorizing termination of the mother's parental rights satisfied under Iowa Code section 232.116(1)(e) and (h) (2024). Yet the mother only implicitly challenges one of the two statutory grounds found by the juvenile court, section 232.116(1)(h). As the mother's rights were terminated on multiple grounds, we may affirm on any one of those grounds. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). The mother does not raise any type of challenge to the statutory grounds for termination under section 232.116(1)(e), waiving any challenge under that ground for termination. *See, e.g.*, *In re J.K.-O.*,

No. 24-0678, 2024 WL 3290381, at *1 (Iowa Ct. App. July 3, 2024). Accordingly, there is a statutory ground authorizing termination under section 232.116(1)(e).

We move to the next step in our three-step process—whether termination is in the child's best interests. When considering best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

As part of her best-interests argument, the mother contends that instead of termination, it would be in the child's best interests to return the child to her care with appropriate safety planning in place. We disagree. The child tested positive for illegal substances at birth. Shortly thereafter, the mother placed the child in a guardianship with a friend because the mother could not care for the child. A little over a year later, the guardian declined to continue in that role. Her reasons for stepping down as guardian included her personal circumstances, but they also included the fact that the mother was verbally abusive to the friend and would show up for visits under the influence of drugs. As the mother still was not able to assume care of the child at that time, the child was adjudicated to be in need of assistance and placed in foster care. Eventually the child was placed with the maternal grandmother, where she remained at the time of the termination hearing.

Meanwhile, the mother continued to struggle with illegal substance use. She completed in-patient substance-use treatment at the beginning of 2024, but in February she tested positive for cocaine. Then, as the social worker described it, the mother "just disappeared"—"[s]he stopped engaging in services," [s]he stopped going to treatment," "[n]obody knew where she was." She had not attended a visit with the child for several months prior to the termination hearing. Nor had the mother participated in the SafeCare program offered to her—a program that would have developed the mother's parenting skills. The mother also has not maintained sobriety for any meaningful period outside a structured setting. The mother conceded at the termination hearing that she could not take care of the child by herself. Based on all this evidence, we are not persuaded that it was in the child's best interests to deny termination and place the child with the mother with supervision.

As to other aspects of the best-interests-of-the-child determination, we note that the mother lacks the level of stability necessary to safely parent a child. She is unemployed. She has not addressed her mental-health issues and has difficulty regulating her emotions.[1] The mother's relationship with the child is also limited. The social worker explained that when she observed visits between the mother

---

[1] The record reveals numerous acts of the mother's concerning conduct. For example, about six months before the termination hearing, the mother got upset with her adult sister who has special needs. The mother assaulted the sister in the presence of the child. Another example is an incident that occurred after a court hearing shortly before the termination hearing. The mother followed the maternal grandmother and the social worker into the parking lot. She tried to prevent the maternal grandmother from leaving and shouted at her. When the social worker attempted to deescalate the situation, the mother responded incoherently and then sat on the hood of the social worker's vehicle.

and child, the child did not know who the mother was and was not comfortable with the mother picking her up. Conversely, the child looks to her placement, the maternal grandmother, to meet her needs and is comfortable in the grandmother's home. The grandmother has completed the necessary steps to serve as an adoptive option. *See* Iowa Code § 232.116(2)(b). Following our de novo review, we conclude termination is a necessary step in the adoptive process and would best serve the child's interests.

As to any permissive exceptions, while the mother's petition on appeal cites Iowa Code section 232.116(3), she does not explain what permissive exception, if any, she seeks to invoke to avoid termination. Accordingly, any argument relating to permissive exceptions to termination is waived, and we do not address it. *See In re K.B.*, No. 24-0284, 2024 WL 1757182, at *1 (Iowa Ct. App. Apr. 24, 2024).

Finally, we address the mother's request for additional time to work toward reunification. The court may grant a parent six additional months to work toward reunification in lieu of termination under certain circumstances. *See* Iowa Code § 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving an additional six months to work toward reunification). But before the court may grant a parent such additional time, it must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

The mother points to recent progress she made without involvement of the Iowa Department of Health and Human Services. Specifically, she completed another in-patient substance-use program the month before the termination hearing, secured housing at a transitional home where she could stay for up to a year or perhaps longer, has a job interview, and has started mental-health treatment. These are all crucial steps that will hopefully lead the mother to a more stable and happy future, and we commend her for her recent progress. Unfortunately, the mother's efforts come too late to warrant additional time in this proceeding. *See In re A.H.*, 950 N.W.2d 27, 41 (Iowa Ct. App. 2020) ("And because the parents' efforts have come at the eleventh hour, we are not convinced they are permanent changes signaling a safe and stable future for these children."). Given the mother's past struggles, we do not believe she would be able to demonstrate the level of stability necessary for reunification within the next six months if she were granted more time to work toward reunification. Accordingly, we do not grant the mother any additional time.

**AFFIRMED.**